ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
FREDERICK A. BATTISTA
Maryland State Bar Member
MARGARET PERLMETER
Arizona State Bar No. 024805
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Fred.Battista@usdoj.gov
Email: Margaret.Perlmeter@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. **CR-17-01423-02-PHX-DGC** |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| | **(Felony Offense)** |
| Sean Fox, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, SEAN FOX, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to an Information which charges the defendant with a violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, Securities Fraud, a Class B felony offense.

2. **MAXIMUM PENALTIES**

a.    A violation of 15 U.S.C. §§ 78j(b) and 78ff, is punishable by a maximum fine of $5,000,000.00, a maximum term of imprisonment of 20 years, or both, and a term of supervised release of three years up to life. A maximum term of probation is five years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)     pay upon conviction a $100 special assessment for each felony count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.     AGREEMENTS REGARDING SENTENCING**

a.     <u>Stipulations Re: Sentence and Additional Person</u>.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree as follows: (1) defendant's sentence shall not exceed the low end of the Sentencing Guidelines range determined by the Court at the time of sentencing; (2) for purposes of calculating gain pursuant to U.S.S.G. §§ 2B1.1(b)(1) and 2B1.4(b)(1), the subject amount shall be defendant's total gain less, the cost of the subject options, which is $368,423.24; (3) the advisory Sentencing Guidelines shall be calculated as follows:

| | | |
|---|---|---|
| i. | Base Offense Level – U.S.S.G. § 2B1.4(a) | 8 |
| ii. | Loss Amount – Sections 2B1.4(b) and 2B1.1(b)(1)(G) | +12 |
| iii. | No Increase for Single Victim – Section § 2B1.1(b)(2) | +0 |

| | iv. | No Increase for Sophisticated Means – Section 2B1.1(b)(10)(C) | +0 |
| | v. | No Increase for Aggravating Role – Section 3B1.1 | +0 |
| | vi. | No Decrease for Mitigating Role – Section 3B1.2 | -0 |
| | vii. | No Increase for Abuse of Trust – Section 3B1.3 | +0 |
| | viii. | Total Adjusted Offense Level Pending Acceptance of Responsibility and Any Downward Variances Granted by the Court | 20 |

(4) for purposes of a Money Judgment, defendant shall be held personally liable for the amount of benefits he derived from the subject offense and not those derived by co-defendant LANNY BROWN; and (5) defendant's spouse will not be charged by the United States with respect to any role she may have played in relation to the two defendants' Securities Fraud and subsequent dispersal of the proceeds as detailed in the Factual Basis of this agreement.

b. <u>Recommendations</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will: (1) recommend that the Court grant a one offense level downward variance in light of the defendant agreeing to enter into a plea agreement to resolve this case pre-indictment via an Information without requiring the United States to seek an indictment, or engage in extensive discovery or motion practice; and (2) recommend that the defendant be sentenced to a term of incarceration which is the low end of the Sentencing Guidelines range determined by the Court at the time of sentencing, if it is determined that a sentence of imprisonment is warranted under Zones B, C or D  (defendant is free to recommend any sentence, including a term of probation).

c. <u>Non-Binding Recommendations</u>.   The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

d. <u>Stipulations Re: Money Judgment</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the Court shall issue a Money Judgment in the amount of $368,423.24, less the amount of federal income tax defendant previously

1   paid on the gain in 2014, this amount being $66,320; less the amount of a federal early

2   withdrawal penalty related to the gain defendant previously paid in 2015, this amount being

3   $3,600; and less the amount of benefits solely derived by co-defendant LANNY BROWN,

4   this amount being $148,160.48, for a total adjusted amount of $150,342.76. Defendant

5   agrees that the total adjusted amount, along with the amount he previously paid in federal

6   income tax, reflect funds that are both directly attributable to the subject unlawful gain and

7   constitute his personal benefit in the subject scheme.

8       e.    Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant

9   specifically agrees to pay full restitution, regardless of the resulting loss amount but in no

10   event more than $10,000.00, to all victims directly or proximately harmed by the

11   defendant's "relevant conduct," including conduct pertaining to any dismissed counts or

12   uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct

13   constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant

14   understands that such restitution will be included in the Court's Order of Judgment and that

15   an unanticipated restitution amount will not serve as grounds to withdraw the defendant's

16   guilty plea or to withdraw from this plea agreement.

17       f.    Assets and Financial Responsibility. The defendant shall make a full

18   accounting of all assets in which the defendant has any legal or equitable interest. The

19   defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or

20   transfer any such assets or property before sentencing, without the prior approval of the

21   United States (provided, however, that no prior approval will be required for routine, day-

22   to-day expenditures). The defendant also expressly authorizes the United States Attorney's

23   Office to immediately obtain a credit report as to the defendant in order to evaluate the

24   defendant's ability to satisfy any financial obligation imposed by the Court. The defendant

25   also shall make full disclosure of all current and projected assets to the U.S. Probation

26   Office immediately and prior to the termination of the defendant's supervised release or

27   probation, such disclosures to be shared with the U.S. Attorney's Office, including the

28   Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the

- 4 -

1    Inmate Financial Responsibility Program to fulfill all financial obligations due and owing
2    under this agreement and the law.

3          g.      Acceptance of Responsibility.  If the defendant makes full and complete
4    disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's
5    commission of the offense, and if the defendant demonstrates an acceptance of
6    responsibility for this offense up to and including the time of sentencing, the United States
7    will recommend a two-level reduction in the applicable Sentencing Guidelines offense
8    level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more,
9    the United States will recommend an additional one-level reduction in the applicable
10   Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

11   **4.      AGREEMENT TO NOT PROSECUTE**

12         a.      This office shall not prosecute the defendant for any additional offenses
13   committed by the defendant, and known by the United States, in connection with the
14   subject Securities Fraud, and subsequent dispersal of the gain, as detailed in the factual
15   basis of this agreement.

16         b.      This agreement does not, in any manner, restrict the actions of the United
17   States in any other district or bind any other United States Attorney's Office.

18   **5.      COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

19         a.      If the Court, after reviewing this plea agreement, concludes that any
20   provision contained herein is inappropriate, it may reject the plea agreement and give the
21   defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P.
22   11(c)(5).

23         b.      If the defendant's guilty plea or plea agreement is rejected, withdrawn,
24   vacated, or reversed at any time, this agreement shall be null and void, the United States
25   shall be free to prosecute the defendant for all crimes of which it then has knowledge and
26   any charges that have been dismissed because of this plea agreement shall automatically
27   be reinstated.  In such event, the defendant waives any and all objections, motions, and
28   defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional

- 5 -

1   restrictions in bringing later charges or proceedings.  The defendant understands that any

2   statements made at the time of the defendant's change of plea or sentencing may be used

3   against the defendant in any subsequent hearing, trial, or proceeding subject to the

4   limitations of Fed. R. Evid. 410.

5   **6.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

6           The defendant waives (1) any and all motions, defenses, probable cause

7   determinations, and objections that the defendant could assert to the indictment or

8   information; and (2) any right to file an appeal, any collateral attack, and any other writ or

9   motion that challenges the conviction, an order of restitution or forfeiture, the entry of

10  judgment against the defendant, or any aspect of the defendant's sentence, including the

11  manner in which the sentence is determined, including but not limited to any appeals under

12  18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

13  (habeas petitions), and any right to file a motion for modification of sentence, including

14  under 18 U.S.C. § 3582(c).  This waiver shall result in the dismissal of any appeal,

15  collateral attack, or other motion the defendant might file challenging the conviction, order

16  of restitution or forfeiture, or sentence in this case.  This waiver shall not be construed to

17  bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial

18  misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

19  **7.     DISCLOSURE OF INFORMATION**

20          a.     The United States retains the unrestricted right to provide information and

21  make any and all statements it deems appropriate to the U.S. Probation Office and to the

22  Court in connection with the case.

23          b.     Any information, statements, documents, and evidence that the defendant

24  provides to the United States pursuant to this agreement may be used against the defendant

25  at any time.

26          c.     The defendant shall cooperate fully with the U.S. Probation Office.  Such

27  cooperation shall include providing complete and truthful responses to questions posed by

28  the U.S. Probation Office including, but not limited to, questions relating to:

- 6 -

(1)     criminal convictions, history of drug abuse, and mental illness; and

(2)     financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

a.     Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.  Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule).  If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 9.    ELEMENTS OF OFFENSE

### Securities Fraud

### 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5

Commencing on or about August 14, 2014, and continuing until on or about August 21, 2014, in the District of Arizona in part and elsewhere:

First, the defendant willfully used a device or scheme to defraud;

Second, the defendant's acts were undertaken in connection with the purchase of call options for International Rectifier Corporation;

Third, the defendant directly or indirectly used wire communications via the internet (an instrumentality of interstate commerce) or a national securities exchange in connection with these acts; and

Fourth, the defendant acted knowingly, willfully and with the intent to defraud.

1  **10.    FACTUAL BASIS**

2         The defendant admits that the following facts are true and that if this matter were to

3  proceed to trial the United States could prove the following facts beyond a reasonable doubt

4  with respect to facts that occurred in 2014:

5         a.      International Rectifier Corporation ("IRF") was a semiconductor company

6  based in El Segundo, California, with offices worldwide, including Chandler, Arizona,

7  within the District of Arizona.  The common stock of IRF was registered with the United

8  States Securities and Exchange Commission under Section 12(b) of the Securities and

9  Exchange Act of 1934, 15 U.S.C. § 78l.  The common stock of IRF was listed on the New

10  York Stock Exchange under the ticker symbol "IRF."

11         b.      Infineon Technologies AG ("INF") was a semiconductor company based in

12  Germany.  On August 20, 2014, INF publicly announced it had signed a definitive merger

13  agreement whereby INF would acquire IRF for $40 US dollars per share in cash, $3 billion

14  US dollars total.  The merger became final on January 13, 2015.

15         c.      Defendant LANNY BROWN ("BROWN") resided in Queen Creek,

16  Arizona, within the District of Arizona.  Defendant BROWN was employed in IRF's

17  Chandler, Arizona office as the Director of Epi/Silicon Sourcing and Foundry Service

18  Procurement.

19         d.      As an IRF employee, defendant BROWN was subject to IRF's policies,

20  which restricted defendant BROWN's ability to engage in securities transactions.  These

21  policies included "Trading Window Periods" which restricted IRF employees from buying

22  or selling IRF securities at all times except during the periods identified by IRF in the

23  trading windows.  IRF employees were also required to complete a yearly computer based

24  code of conduct training that included IRF's insider trading policies.  IRF required that its

25  employees maintain the confidentiality of information they received through their

26  employment with IRF.  IRF also required that its employees not make securities trades

27  based on confidential information obtained in the course of their employment, not use that

28  information for their personal benefit or disclose that information to any third party.

1        e.      Defendant SEAN FOX ("FOX") resided in Gilbert, Arizona, in the District

2   of Arizona, and was a friend of defendant BROWN.  Defendant FOX had brokerage

3   accounts with optionsXpress, Inc., ("optionsXpress") which allowed him to buy and sell

4   securities, including call options, by using means and instrumentalities of interstate

5   commerce with access to national securities exchanges.

6        f.      A "call option" gives the owner the right to buy a stock at a specific price,

7   known as the strike price, at any time during the life of the option.  The owner of a call

8   option can earn a profit when the price of the underlying stock rises after buying the option.

9        g.      In or about August 2014, in Maricopa County, within the District of Arizona,

10  and elsewhere, defendants BROWN and FOX knowingly and willfully, directly and

11  indirectly, in connection with the purchase and sale of certain securities, those being IRF

12  call options contracts, employed a scheme to defraud.

13       h.      In or about August 2014, the two defendants carried out the scheme to

14  defraud as follows:

15       i.      During the course of his employment with IRF, defendant BROWN obtained

16  material, non-public information ("inside information") regarding a potential upcoming

17  acquisition of publicly traded IRF by another entity or IRF's acquisition of another entity.

18  Defendant BROWN shared this inside information with defendant FOX, knowing that

19  defendant FOX would make securities transactions based on the inside information,

20  thereby generating illegal profits which defendants BROWN and FOX intended to share.

21  Defendant BROWN provided inside information regarding IRF to defendant FOX in

22  violation of: (1) the duties of trust and confidence that defendant BROWN owed IRF and

23  (2) IRF's policies regarding the use and safekeeping of inside information.  In providing

24  this inside information to defendant FOX, defendant BROWN knew that defendant FOX

25  would make securities transactions based on that inside information, thereby generating

26  substantial illegal profits.

27       j.      Defendant FOX then used the inside information belonging to IRF, knowing

28  that defendant BROWN had provided that inside information in violation of a duty of trust

1    and confidence, to make securities transactions in IRF.

2         k.    Between on or about August 11, 2014, and on or about August 12, 2014,

3    defendants BROWN and FOX combined approximately $12,000.00 of funds for the

4    purpose of defendant FOX purchasing IRF call options contracts on their behalf.

5         l.    On or about August 14, 2014, defendant FOX, via the internet, used his

6    optionsXpress account, with account number ending in 7631, an instrumentality of

7    interstate commerce, to purchase approximately 380 call option contracts of IRF for

8    approximately $11,982.80.

9         m.    On or about August 14, 2014, defendant FOX, via the internet, used his

10   optionsXpress account, with account number ending in 3709, an instrumentality of

11   interstate commerce, to purchase approximately 40 call option contracts of IRF for

12   approximately $1,261.35.  Defendant FOX did not inform defendant BROWN of this

13   separate purchase.

14        n.    On or about August 20, 2014, INF publically announced its plan to acquire

15   IRF.  After the announcement, the common stock price of IRF rose substantially.

16        o.    On or about August 21, 2014, defendant FOX sold the approximately 420

17   total IRF call options he had purchased on or about August 14, 2014, for $381,667.38.  As

18   a result of his securities trades based on the inside information received from defendant

19   BROWN, defendant FOX generated at approximately $368,423.73 in illegal profits.

20        p.    After generating the illegal profits, defendant FOX engaged in a series of

21   transactions conducted in a manner to spread out his payments to defendant BROWN of

22   his share of the proceeds generated by the defendants' successful use of inside information

23   related to IRF.  The transactions included the execution of checks related to funds intended

24   for defendant BROWN that were made payable to defendant BROWN's children and

25   stepchildren, and various entities that provided services to defendant BROWN.

26        q.    On or about August 14, 2014, within the District of Arizona and elsewhere,

27   in furtherance of the scheme to defraud as described above, defendants BROWN and FOX,

28   in connection with the purchase of securities of IRF by defendant FOX through his

- 10 -

1   optionsXpress accounts, as directed by defendant BROWN, directly and indirectly used
2   and willfully caused others to use means and instrumentalities of interstate commerce, and
3   the facilities of a national securities exchange, to further the fraudulent scheme described
4   above.

5       The defendant shall swear under oath to the accuracy of this statement and, if the
6   defendant should be called upon to testify about this matter in the future, any intentional
7   material inconsistencies in the defendant's testimony may subject the defendant to
8   additional penalties for perjury or false swearing, which may be enforced by the United
9   States under this agreement.

10              **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

11      I have personally read this entire plea agreement and have also read the entire plea
12   agreement with the assistance of my attorney.  I understand each of its provisions and I
13   voluntarily agree to it.

14      I have discussed the case and my constitutional and other rights with my attorney.
15   I understand that by entering my plea of guilty I shall waive my rights to plead not guilty,
16   to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to
17   present evidence in my defense, to remain silent and refuse to be a witness against myself
18   by asserting my privilege against self-incrimination, all with the assistance of counsel, and
19   to be presumed innocent until proven guilty beyond a reasonable doubt.

20      I agree to enter my guilty plea as indicated above on the terms and conditions set
21   forth in this agreement.

22      I have been advised by my attorney of the nature of the charges to which I am
23   entering my guilty plea.  I have further been advised by my attorney of the nature and range
24   of the possible sentence and that my ultimate sentence shall be determined by the Court
25   after consideration of the advisory Sentencing Guidelines.

26      My guilty plea is not the result of force, threats, assurances, or promises, other than
27   the promises contained in this agreement.  I voluntarily agree to the provisions of this
28   agreement and I agree to be bound according to its provisions.

- 11 -

1       I understand that if I am granted probation or placed on supervised release by the

2  Court, the terms and conditions of such probation/supervised release are subject to

3  modification at any time.  I further understand that if I violate any of the conditions of my

4  probation/supervised release, my probation/supervised release may be revoked and upon

5  such revocation, notwithstanding any other provision of this agreement, I may be required

6  to serve a term of imprisonment or my sentence otherwise may be altered.

7       This written plea agreement, and any written addenda filed as attachments to this

8  plea agreement, contain all the terms and conditions of the plea.   Any additional

9  agreements, if any such agreements exist, shall be recorded in a separate document and

10  may be filed with the Court under seal; accordingly, additional agreements, if any, may not

11  be in the public record.

12       I further agree that promises, including any predictions as to the Sentencing

13  Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

14  (including my attorney) that are not contained within this written plea agreement, are null

15  and void and have no force and effect.

16       I am satisfied that my defense attorney has represented me in a competent manner.

17       I fully understand the terms and conditions of this plea agreement.  I am not now

18  using or under the influence of any drug, medication, liquor, or other intoxicant or

19  depressant that would impair my ability to fully understand the terms and conditions of this

20  plea agreement.

21

22  _____12/13/17_____
     Date                           SEAN FOX
                                   Defendant

23  /

24  /

25  /

26  /

27  /

28

1

## APPROVAL OF DEFENSE COUNSEL

2    I have discussed this case and the plea agreement with my client in detail and have
3    advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the
4    constitutional and other rights of an accused, the factual basis for and the nature of the
5    offense to which the guilty plea will be entered, possible defenses, and the consequences
6    of the guilty plea including the maximum statutory sentence possible.  I have further
7    discussed the concept of the advisory Sentencing Guidelines with the defendant.  No
8    assurances, promises, or representations have been given to me or to the defendant by the
9    United States or any of its representatives that are not contained in this written agreement.
10   I concur in the entry of the plea as indicated above and that the terms and conditions set
11   forth in this agreement are in the best interests of my client.  I agree to make a bona fide
12   effort to ensure that the guilty plea is entered in accordance with all the requirements of
13   Fed. R. Crim. P. 11.

14   _____            _____
     Date                               MIEKE TER POORTEN
15                                      Attorney for Defendant

16   /

17   /

18   /

19   /

20   /

21   /

22   /

23   /

24   /

25   /

26   /

27   /

28   /

1

## APPROVAL OF THE UNITED STATES

2       We have reviewed this matter and the plea agreement.  We agree on behalf of the

3   United States that the terms and conditions set forth herein are appropriate and are in the

4   best interests of justice.

5

6                                              ELIZABETH A. STRANGE
                                               First Assistant United States Attorney
7                                              District of Arizona

8   _____              _____
    Date
9                                              FREDERICK A. BATTISTA
                                               MARGARET PERLMETER
10                                             Assistant U.S. Attorneys

11                      ## ACCEPTANCE BY THE COURT

12

13  _____              _____
    Date                                       United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28